**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CRYSTAL ANTONELLI, et. al., | CASE NO. 5:11-cv-03874 EJD |
| Plaintiff(s), | **ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| THE FINISH LINE, INC., et. al., | [Docket Item No. 13] |
| Defendant(s). | |

Plaintiffs Crystal Antonelli, Anny Chi, Alisha Elam, Analynn Foronda, and Karen Lopez (collectively, "Plaintiffs") bring the instant action against their former employer, The Finish Line, Inc. (herein, "Defendant"), as well as their former manager David Meyer. Presently before the court is Defendant's Motion to Compel Arbitration (the "Motion") of Plaintiff's claims and to stay this action in favor of that proceeding. See Docket Item No. 13. Plaintiff's opposed the Motion. The court found this matter suitable for decision without oral argument and previously vacated the associated hearing date.

Jurisdiction in this court arises pursuant to 28 U.S.C. §§ 1332 and 1367. Based on the court's careful review of the moving, responding, reply and supplemental papers filed by all parties, Defendant's Motion will be denied for the reasons explained below.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

*This Action*

Defendant is a retailer of athletic apparel and accessories operating 660 stores across the

1
CASE NO. 5:11-cv-03874 EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

1  United States. See Complaint, Docket Item No. 1, at ¶ 8.  Plaintiffs are either current or former
2  employees of Defendant's store in Milpitas, California.  Id., at ¶ 10.  Between December, 2009, and
3  April, 2010, Plaintiffs allege that their manager placed a concealed camera in the employee restroom
4  and general dressing room of the Milpitas store to create surreptitious video recordings.  Id., at ¶ 12.
5  Plaintiffs were among the individuals secretly-recorded while utilizing the restroom and dressing
6  room.  Id., at ¶ 17.

7  On August 8, 2011, Plaintiffs filed the Complaint underlying this action for: (1) violation of
8  the Article I, Section 1 of the California Constitution, (2) violation of California Civil Code §
9  1708.8, (3) violation of California Labor Code § 435(a), (4) invasion of privacy, (5) negligence, (6)
10 negligent supervision, (7) intentional infliction of emotional distress, (8) negligent infliction of
11 emotional distress, and (9) declaratory and injunctive relief.  In addition to monetary damages,
12 Plaintiffs seek penalties under California's Labor Code Private Attorneys General Act ("PAGA"),
13 California Labor Code § 2698 et. seq., and attorneys fees pursuant to California Code of Civil
14 Procedure § 1021.5.

15 *This Motion*

16 Defendant filed the instant motion on September 2, 2011, seeking an order compelling
17 Plaintiffs to submit their claims to arbitration in accordance with The Finish Line's Employee
18 Dispute Resolution Plan (the "DRP").

19 The DRP is a 5-page document "intended to facilitate the prompt, fair and inexpensive
20 resolution of legal disputes" between Defendant and its present and former employees, including
21 applicants.  See Decl. of Regina Heller ("Heller Decl."), Docket Item No. 14, at Ex. 1.  It is "the
22 exclusive, final and binding method by which disputes are resolved," requires all disputes be
23 submitted to arbitration, and prohibits litigation in any other forum.  See id.   Except as otherwise
24 The DRP Prior to commencing employment with Defendant, Plaintiffs each completed and signed
25 an employment application which includes the following statement:

26> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or
27> candidacy for employment and/or cessation of employment with The Finish Line, Inc., exclusively by final and binding arbitration before a
28> neutral arbitrator.  By way of example only, such claims include

2
CASE NO. 5:11-cv-03874 EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

> claims under federal, state, and local statutory or common law, such as the Age Discrimination and Employment Act, title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and the law of tort. Complete details of my agreement to submit these claims to arbitration are contained in The Finish Line, Inc. Employee Dispute Resolution Plan, which has been made available for my review prior to the execution of this application.

See id., at Ex. 2.

Each of the Plaintiffs signed the employment application confirming they read and understood its terms and voluntarily agreed to them. See id.

## II. LEGAL STANDARD

Pursuant to the FAA, 9 U.S.C. § 1 et. seq., a written arbitration agreement is "valid, irrevocable, and enforceable" in much the same way as any other contract. 9 U.S.C. § 2; see also Rent-A-Center, West, Inc. v. Jackson, __ U.S. __, 130 S. Ct. 2772, 2776 (2010). "A party to a valid arbitration agreement may 'petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement.'" Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4). When such a request is made, the court must determine whether an arbitration agreement exists and whether it encompasses the dispute at issue. See id. at 1012; see also Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

A motion to compel arbitration should be denied if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986). Moreover, arbitration should be denied if the court finds "grounds as exist at law or in equity for the revocation of any contract," such as fraud, duress or unconscionability. 9 U.S.C. § 2; Rent-A-Center, 130 S. Ct. at 2776. The court applies ordinary state-law principles governing the formation of contracts to carry out this task. Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007).

## III. DISCUSSION

As indicated above, Plaintiffs each signed an employment application which contained a requirement to resolve disputes through arbitration as specified in the DRP. Defendant now moves this court to compel Plaintiffs to arbitrate all of their claims. Plaintiffs argue, inter alia, that the DRP is procedurally and substantively unconscionable and, therefore, unenforceable. On that issue, the court agrees.[1]

"Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable." Id. Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power, while substantive unconscionability focuses on overly-harsh or one-sided terms. Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (1997). While both types must be present in order for a finding of unenforceability, it is not necessary that they be present in the same degree. Davis, 485 F.3d at 1072. For this reason, "[c]ourts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" Id. Furthermore, "a claim of unconscionability often cannot be determined merely by examining the face of the contract, but will require inquiry into its setting, purpose, and effect." Perdue v. Crocker Nat'l Bank, 38 Cal. 3d 913, 926 (1985).

### A. Procedural Unconscionability

The court first considers procedural unconscionability. This examination "focuses on whether the contract was one of adhesion." Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1042 (9th Cir. 2001). If it is, the court then examines whether the agreement was obtained through oppression and surprise. A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486 (1982). "Was it 'imposed on employees as a condition of employment'? Was there 'an opportunity to negotiate'?" Soltani, 258 F.3d at 1042 (quoting Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000)). Were the terms "hidden in a prolix printed form drafted by the party

---

[1] Although Plaintiffs argue that PAGA claims are not subject to arbitration under the DRP, the court does not address that issue herein because even if it found such claims arbitrable, it would nonetheless find the DRP unconscionable and unenforceable.

4
CASE NO. 5:11-cv-03874 EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

seeking to enforce" the contract? A & M Produce Co., 135 Cal. App. at 486. "Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." Kinney v. United Healthcare Servs., Inc., 70 Cal. App. 4th 1322, 1327 (1999).

In Martinez v. Master Protection Corp., 118 Cal. App. 4th 107 (2004), Martinez was required to sign an arbitration agreement nearly identical to the one at issue here as a condition of his employment as a salesman with FireMaster. After Martinez appealed the trial court's order granting the FireMaster's motion to compel arbitration, the Court of Appeal had no difficulty finding the arbitration agreement procedurally unconscionable. 118 Cal. App. 4th at 114. The court wrote:

> It is undisputed Martinez was required to execute the arbitration agreement as a prerequisite of his employment by FireMaster. The letter confirming FireMaster's offer of employment states that Martinez's signing and acceptance of the arbitration agreement was a specific "condition of employment." No evidence indicates Martinez had any opportunity to negotiate or refuse to sign the arbitration agreement....An arbitration agreement that is an essential part of a "take it or leave it" employment condition, without more, is procedurally unconscionable. The arbitration agreement meets that definition and is clearly adhesive and procedurally unconscionable.

Id.

Much like the agreement at issue in Martinez, it is clear that the DRP is an adhesion contract. "An adhesion contract is a standardized contract which is imposed on a party of weaker bargaining strength on a take-it or leave-it basis." Ontiveros v. DHL Express (USA), Inc., 164 Cal. App. 4th 494, 502 (2008). And like Martinez, Defendant required Plaintiffs to assent to the pre-printed terms of the DRP as a condition of employment. The portion of the employment application referencing the DRP is included in a pre-printed collection of paragraphs grouped together under the heading "Applicant Statement." By signing the application, Plaintiffs had to confirm that a copy of the DRP was "made available" for review prior to execution, and that they "read and understood" and "voluntarily agreed" to the DRP's terms. But here, the arbitration agreement has an effect even broader than that discussed in Martinez because Defendant required it as a condition of Plaintiffs' *application* for employment. Plaintiffs could not present themselves as employment candidates otherwise. This specific characteristic renders it particularly oppressive. See Chavarria v. Ralphs

5
CASE NO. 5:11-cv-03874 EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

Grocer Co., No. 11-02109 DDP (VBKx), 2011 WL 4104856, 2011 U.S. Dist. LEXIS 104694, at *14-15 (C.D. Cal. Sept. 15, 2011).

Moreover, an element of surprise is evident here because Plaintiffs had no reasonable opportunity to read or review the DRP, whether on their own or with an adult, and could not negotiate its terms or that of the employment application prior to signing it. Defendant, a national corporation, is without doubt the party of stronger bargaining strength, if not the party with *all* of the bargaining strength in this scenario. By contrast, Plaintiffs were each teenagers between the ages of 16 and 17 and still attending high school at the time they signed the employment application. Plaintiffs' collective belief that they had no meaningful choice but to accept the DRP in order to be considered for the job, even without having reviewed it in advance, is entirely understandable under these circumstances.

Notably, Defendants do not dispute the adhesive nature of the DRP, nor do they dispute the circumstances surrounding Plaintiffs' application for employment. Instead, Defendant argues that "the mere fact that a contract is one of adhesion on its own is no longer enough to render an agreement procedurally unconscionable," citing the United States Supreme Court's opinion in AT&T Mobility LLC v. Concepcion, __ U.S. __, 131 S. Ct. 1740 (2011). But even assuming that is an accurate description of the Court's holding, it is of little import here since California law requires more than mere adhesion to support a determination of procedural unconscionability.[2]

Accordingly, because the DRP is an adhesion contract imposed by Defendant as a condition

---

[2] Concepcion is a case involving *class-action waivers* in arbitration agreements. There, the Court held the rule created by the California Supreme Court in Discover Bank v. Superior Court, 36 Cal. 4th 148 (2005), was preempted by the FAA because "nothing in [the FAA] suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Concepcion, 131 S. Ct. at 1748. In reaching that conclusion, the court specifically acknowledged that the doctrine of unconscionability remains an operative basis for invalidating arbitration agreements under the express language of the FAA. Id. at 1746 ("The final phrase of [9 U.S.C. § 2], however, permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or *unconscionability*,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."). The same is true of Lagatree v. Luce, Forward, Hamilton & Scripps, LLP, 74 Cal. App. 4th 1105, 1119 (1999), its companion case, EEOC v. Luce, Forward, Hamilton & Scripps, 345 F.3d 742, 754 (9th Cir. 2003), and Bradley v. Harris Research, Inc., 275 F.3d 884, 890 (9th Cir. 2001), all of which explicitly recognize that an arbitration agreement can be invalidated based on traditional principles of contract revocation.

of application for employment on a "take-it or leave-it basis" without also providing Plaintiffs a meaningful opportunity to negotiate or understand its effect, the court finds that it is procedurally unconscionable and that such unconscionability is particularly strong within the context presented.

### B. Substantive Unconscionability

The court now turns to substantive unconscionability. This inquiry focuses on contract terms that are "overly harsh" or "one-sided." Armendariz, 24 Cal. 4th at 114 (citing A & M Produce Co., 135 Cal. App. 3d at 487). "[M]utuality is the 'paramount' consideration when assessing substantive unconscionability." Pokorny v. Quixtar, Inc., 601 F.3d 987, 997-98 (9th Cir. 2010) (citing Abramson v. Juniper Networks, Inc., 115 Cal. App. 4th 638, 657 (2004)). To avoid being found substantively unconscionable, "arbitration agreements must contain at least 'a modicum of bilaterality'...." Id. at 998 (quoting Armendariz, 24 Cal. 4th at 119).

#### 1. The Cost-Splitting Provision is Unconscionable

The DRP's cost-splitting provision requires the parties to equally share the cost of the arbitrator, but caps the employee contribution at "the greater of (I) $10,000.00 or (ii) 10% of the amount in controversy," or at an amount determined by the arbitrator based upon a showing of substantial need. The DRP also requires each party to deposit "funds or post other appropriate security" in an amount determined by the arbitrator at least ten days before the first day of the hearing.

The Ninth Circuit has held that an arbitration cost provision which places complaining employees at risk of incurring greater costs than they would bear if they were to litigate their claims in court is substantively unconscionable. Id. at 1004. Such is the problem here. Even with a cap, the DRP's cost-splitting provision presumes the employee will pay a rather extraordinary amount - not less than $10,000.00. Although the arbitrator can reduce the employee contribution based on "substantial need," this ill-defined standard offers no guarantee that costs will be reduced appropriately, and certainly does not contemplate that those fees will be limited to the $350.00 filing fee required for new federal litigation, the $175.00 fee required by the AAA Employment

7
CASE NO. 5:11-cv-03874 EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

Arbitration Rules,[3] or be waived altogether.

Moreover, the fact that fees for the arbitration must be paid in advance poses an obstacle not imposed by the traditional court process. This pre-pay requirement would prove insurmountable to most individuals, let alone the Plaintiffs here. See Nagrampa v . MailCoups, Inc., 469 F.3d 1257, 1285 (9th Cir. 2006) ("[T]o the extent the fee-splitting provision may impede Nagrampa from vindicating statutory rights, it would be unenforceable and illegal under California law as contrary to public policy.").

Defendant's argument in response, based primarily on Green Tree Financial Corporation - Alabama v. Randolph, 531 U.S. 79 (2000), is unpersuasive. The arbitration agreement discussed in Green Tree was completely silent as to the division of costs. 531 U.S. at 89. The Court held the agreement's silence did not itself render the agreement unenforceable because the risk of "prohibitive costs" was "too speculative." Id. at 91. In contrast to Green Tree, costs are not so speculative in this case. The DRP contains an explicit provision obligating the employee to pay arbitration costs. And since a payment of no less than $10,000.00 is presumed absent a particular finding, the DRP's unstated purpose must be to ensure employees pay something, and perhaps something extraordinary, to raise their claims in arbitration.

Although the court recognizes Plaintiffs must bear "the burden of showing the likelihood of incurring such costs," Plaintiffs have satisfied this requirement. Id. at 92. The plain language of the DRP basically accomplishes this task on its own. Thus, the court finds the cost-splitting provision in the DRP unconscionable.

**2.    The "Place and Manner" Provision is Unconscionable**

The DRP requires that any arbitration initiated under its terms must occur in Indianapolis, Indiana. Plaintiffs argue this "place and manner" provision is unconscionable as applied to them. The court agrees.

Forum selection clauses are generally enforceable unless they are unreasonable. Intershop Commc'ns AG v. Super. Ct., 104 Cal. App. 4th 191, 196 (2002). "[A] party may attempt to make a

---

[3] The court notes that the AAA Employment Dispute Resolution Rules apply only "[t]o the extent not inconsistent with the [DRP]...."

8
CASE NO. 5:11-cv-03874 EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

showing that would warrant setting aside the forum-selection clause - that the agreement was affected by fraud, undue influence, or overweening bargaining power; that enforcement would be unreasonable and unjust; or that proceedings in the contractual forum will be so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of his day in court." Nagrampa, 469 F.3d at 1287 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 632 (1985)). "In order to assess the reasonableness of...'place and manner' restrictions, the respective circumstances of the parties become relevant." Bolter v. Super. Ct., 87 Cal. App. 4th 900, 910 (2001).

Considering the respective circumstances of the parties, the court is compelled to find that the provision requiring these teenage plaintiffs to arbitrate their claims in Indiana is unconscionable. Plaintiffs are each California residents and, as already emphasized, have relatively low incomes. Requiring them to arbitrate the instant employment claims, all of which are based in either California statutory and common law, in a forum located nearly across the country is logistically and financially inconvenient. Plaintiffs will necessarily incur costs related to travel. In contrast, Defendant is given the distinct advantage of litigating in its home state. Moreover, when this provision is coupled with the DRP's requirement for prepayment of arbitration fees, the amount of up-front fees and costs necessary to simply commence a case operates as a constructive deprivation of Plaintiffs' "day in court." That is unreasonable, unjust, and cannot be enforced in this context.

### 3. The Unilateral Cancellation Provision is Unconscionable

The DRP allows Defendant the ability to terminate it at any time with sixty days notice to employees. Plaintiffs do not have a similar right under the DRP's terms. This unilateral cancellation provision is unconscionable. See Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1179 (9th Cir. 2003) (finding unconscionable provision allowing employer exclusive ability to modify or terminate dispute resolution rules with thirty-days advance notice to employees).

The case relied upon by Defendant, Quevedo v. Macy's Inc., 798 F. Supp. 2d 1122 (2011), does not compel a different conclusion. There, the court actually found unconscionable the provision allowing Macy's to unilaterally modify or cancel its employment agreement. At the same time, however, the Quevedo court determined the unconscionability of this provision did not render

9
CASE NO. 5:11-cv-03874 EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

the entire agreement unenforceable since it could be easily severed. Thus, that court's reasoning is certainly instructive with regard to the ultimate outcome of this motion, it does not displace the primary finding that the DRP's unilateral cancellation provision is unconscionable. Quevedo is entirely consistent with this result.

### 4. The Remaining Provisions are not Unconscionable

Plaintiff argues that three more provisions of the DRP are unconscionable: (1) the "choice of law" provision, (2) the discovery provision, and (3) the arbitrator appointment provision. The court dedicates minimal discussion to these provisions, however, because they are not unconscionable.

The "choice of law" provision[4] is not unconscionable because it does not necessarily result in the application of Indiana substantive law, but only compels the application of Indiana *choice-of-law* rules.[5] Thus, the provision's plain language does not directly result in the loss of California statutory rights feared by Plaintiffs.

The discovery provision is not unconscionable because Plaintiffs have not shown how it prevents them from effectively investigating and presenting their claims.[6] See Mercuro v. Super.

---

[4] This provision states:

> Except where otherwise expressly provided under this Plan, the Arbitrator shall apply the substantive law or law which would be applied by the United States District Court for the Southern District of Indiana - Indianapolis Division. The Arbitrator is without jurisdiction to apply any different substantive law.

[5] In any event, it appears Indiana choice of law rules would weigh in favor of applying California substantive law to this litigation since Indiana applies "the law of the forum with the most intimate contacts to the facts." Nautilus Ins. Co. v. Reuter, 537 F.3d 733, 737 (7th Cir. 2008) (citing Emp'rs Ins. of Wausau v. Recticel Foam Corp., 716 N.E. 2d 1015, 1024 (Ind. Ct. App. 1999)).

[6] This provision states, in pertinent part:

> The Arbitrator shall have the discretion to determine the form, amount, and frequency of discovery, subject to the following guidelines:
>
> 1. The deposition of the party who submitted the Demand shall be allowed as a matter of right. After she/he has been deposed (or the decision is made not to depose him/her), each party shall be allowed three depositions as a matter of right. Any additional depositions are allowable only upon a showing of substantial need by the moving party.
>
> 2. Each party may propound one set of no more than ten

CASE NO. 5:11-cv-03874 EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

Ct., 96 Cal. App. 4th 167, 182-83 (2002) (finding unconvincing argument that discovery provisions in arbitration agreement are overly restrictive "without evidence showing how the discovery provisions are applied in practice."). Indeed, arbitration discovery can be restricted to something less than that allowed by the rules applicable to litigation. See Armendariz, 24 Cal. 4th at 105. In addition, the DRP does not put up an absolute bar to additional discovery; the arbitrator may allow for investigation in excess of that described in the DRP for substantial need or good cause shown.

Finally, the provision providing for the arbitrator appointment process[7] is not unconscionable because of the "repeat player effect." Under the language of this provision, up to 33 potential arbitrators can be proposed by the AAA if the selection process is taken to its end, and Plaintiff is able to strike proposed names during each of three rounds. This is far from the procedure described in Mercuro, которая only allowed for eight total candidates and precluded the plaintiff in that case from any participation in selection of the arbitrator.

### C. Conclusion

As discussed above, the court finds the DRP procedurally and substantively unconscionable. While Defendant argues that any offending provisions can be severed to preserve the DRP's underlying intent, severance is of no cure here. The DRP's adhesive nature, lack of mutuality, and questionable context within which it was imposed so infect the DRP that it is left "permeated" with

---

interrogatories, including subparts. Additional interrogatories may be propounded only upon a showing of good cause.

[7] This provision provides:

> The Arbitrator shall be selected as follows. The AAA shall give each party a list of 11 arbitrators drawn from its panel of its Employment Dispute Resolution Roster in its regional office in Cincinnati, Ohio. Each party may strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, that individual shall be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternately from the list of common names until only one name remains. The party who initiates the claim shall strike first. If no common name exists on the lists of all parties, the AAA shall furnish an additional list and the process shall be repeated. If no Arbitrator has been selected after two lists have been distributed, then the parties shall strike alternately from a third list, with the party intiating the claim striking first, until only one name remains. That person shall be designated as the Arbitrator.

unconscionability. See Armendariz, 24 Cal. 4th at 122. The particular provisions identified as unlawful simply add to the total air of unfairness. It therefore cannot be enforced against Plaintiffs.

### IV. ORDER

Based on the foregoing, Defendant's Motion to Compel Arbitration is DENIED. The court will issue a separate order addressing scheduling matters.

**IT IS SO ORDERED.**

Dated: February 16, 2012



EDWARD J. DAVILA
United States District Judge

CASE NO. 5:11-cv-03874 EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

United States District Court
For the Northern District of California